# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| **In Re:**<br><br>Cortney Casper,<br><br>Debtor. | **Bankruptcy Case<br>No. 19-41012-JMM** |

### MEMORANDUM OF DECISION

**Appearances:**

    Thomas D. Smith, Pocatello, Idaho, Attorney for Chapter 7 Trustee.

    Ryan E. Farnsworth, Idaho Falls, Idaho, Cortney Casper.

*Introduction*

Cortney Casper ("Debtor") filed his chapter 7 bankruptcy petition on October 23, 2019, Dkt. No. 1, and this Court entered an Order of Discharge on July 20, 2020. Dkt. No. 69. The chapter 7 Trustee ("Trustee")[1] filed a Motion for Turnover of Estate Property on August 17, 2020, to which Debtor objected. Dkt. Nos. 71 and 72. The parties submitted stipulated facts and exhibits, Dkt. No. 76, and a hearing at which they presented oral arguments was held on December 8, 2020. Dkt. No. 80. The parties

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–86.

MEMORANDUM OF DECISION – 1

submitted written closing arguments in support of their respective positions, Dkt. Nos. 81 and 82, and the matter was thereafter deemed under advisement. Having now considered the record, applicable law, and arguments of the parties, the Court issues the following decision which resolves the motion. Rules 7052; 9014.

## *Facts*

The parties stipulated to the relevant facts. On January 30, 2019, Debtor executed a physician employment agreement ("Agreement") with Bingham Memorial Hospital, Inc. ("BMH") to provide professional healthcare services. Dkt. No. 76, Ex. A. The Agreement required that the Debtor move to and maintain a residence in Blackfoot, Idaho within fifteen miles of BMH, as well as work full-time, specified as forty hours per week. *Id*. Pursuant to that requirement, Debtor moved to Blackfoot, Idaho prior to commencing any work at BMH. *Id*. The term of the Agreement was to commence on or before June 30, 2019, and would continue for an initial term of five years ending on June 29, 2024 unless it was terminated in accordance with Section 5.1 of the Agreement. *Id*. That section provides that the Agreement could be terminated only upon mutual agreement by both parties. *Id*. The original Agreement also provided that Debtor "shall" receive a $25,000 relocation bonus payable thirty days after the start date as long as the Debtor complied with the relocation requirements set forth therein. *Id*. Moreover, if the Agreement was terminated in the first two years of employment, Debtor would be required to pay back a pro rata share of the relocation bonus.

MEMORANDUM OF DECISION − 2

Debtor and BMH executed an amendment to the Agreement ("Amendment") on July 31, 2019. Dkt. No. 76, Ex. B. The Amendment changed the Debtor's work requirement from full-time to part-time for six months. *Id*. at ¶ 3.1-1(o). This change did not replace the full-time work requirement of the Agreement; rather, it supplemented the full-time work requirement by specifying that six months of employment would be part-time and the remainder of the contract term would be full-time. The Amendment permissibly allowed Debtor to begin working full-time prior to the end of that six-month period, January 31, 2020, upon the mutual agreement of both parties. *Id*. The Amendment also prescribed the Debtor's salary, specifically providing that, during the part-time period of the employment, July 30, 2019 through January 31, 2020, Debtor would be paid a part-time salary. *Id*. at ¶ 4.1-6. The Amendment states, "During the following eighteen (18) months of this Agreement February 1, 2020 through July 31,2021, Physician will be paid based upon an annual salary of Two Hundred Eighty Thousand dollars ($280,000) with Productivity Compensation." *Id*.

The Amendment, like the original agreement, also provided that the Debtor "shall" receive a $25,000 relocation bonus if he complied with all the requirements set forth therein. *Id*. One such requirement is that the Debtor begin working full-time for BMH and continue working full-time for at least thirty days. In other words, Debtor was required to begin working part-time for BMH right away and begin working full-time no later than six months after the Amendment date. Once Debtor fulfilled the required

MEMORANDUM OF DECISION − 3

obligation of working full-time for thirty days, BMH, in exchange, was required to pay Debtor the relocation bonus.

Between July 21, 2019 and January 4, 2020, Debtor worked at least part-time for BMH pursuant to the Amendment. *Id*. Debtor filed his bankruptcy petition on October 23, 2019, and then commenced working full-time on January 5, 2020. In February 2020, after Debtor had worked full-time for a period of thirty days, Debtor received $15,392.72 of the $25,000 relocation bonus after deductions for taxes and support were withheld by BMH.

### *Parties' Arguments*

Trustee argues that 53%, or $12,263.37, of the relocation bonus should be turned over to the Trustee pursuant to § 542(a) as property of the estate under § 541 because that is the share of the bonus that is attributable to Debtor's prepetition employment. Dkt. No. 81. In response, Debtor argues that the postpetition earnings exception contained in § 541(a)(6) applies and that none of the bonus is attributable to prepetition services. Dkt. No. 82. No party contends that the Agreement is an executory contract.

### *Analysis and Disposition*

When a bankruptcy petition is filed, a bankruptcy estate is created. § 541(a). Section 542(a) requires that an entity in possession, custody, or control, during the case, of property that the trustee may use, shall deliver the property to the trustee, and account for such property or the value of such property, subject to certain exceptions. The Supreme Court has noted that Congress intended the scope of § 541(a)(1) to be broad.

MEMORANDUM OF DECISION − 4

*United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S. Ct. 2309, 2313, 76 L. Ed. 2d 515 (1983). Congress also intended, however, for debtors to be able to make a "fresh start" by shielding from creditors the debtor's postpetition earnings and acquisitions. *Harris v. Viegelahn*, 575 U.S. 510, 135 S. Ct. 1829, 1835, 191 L. Ed. 2d 783 (2015). Sometimes, as is the case here, bankruptcy courts are called upon to determine where the property of the estate ends, and where the debtor's fresh start begins.

Although the bankruptcy estate includes all legal and equitable interests in property held by the debtor at the time of filing, certain specified exceptions apply. *Anderson v. Rainsdon (In re Anderson)*, 572 B.R. 743, 747 (9th Cir. BAP 2017). One such exception, commonly referred to as the postpetition earnings exception, is found in § 541(a)(6). It provides that while "[p]roceeds, product, offspring, rents, or profits of or from property of the estate" are estate property, "earnings from services performed by an individual debtor after the commencement of the case" are not. In other words, proceeds or profits earned after the commencement of the case are generally not property of the estate. What happens, however, when a debtor's interest arises prepetition, but the contingency that vests the interest does not occur until after the commencement of the bankruptcy?

The definition of property of the estate under § 541(a) is broadly construed to encompass a debtor's contingent interest in future payments, as long as that interest is "sufficiently rooted" in the debtor's prepetition past, even if the contingent interest is dependant on future contingencies that occur after the filing date. In the Ninth Circuit,

MEMORANDUM OF DECISION – 5

"any contingent interest of the debtor 'sufficiently rooted in the pre-bankruptcy past' is estate property, even if the contingency is not satisfied until after the bankruptcy is filed." *Anderson v. Rainsdon (In re Anderson)*, 572 B.R. at 747 (citing *Neuton v. Danning (In re Neuton)*, 922 F.2d 1379, 1382–83 (9th Cir. 1990); *Rau v. Ryerson (In re Ryerson)*, 739 F.2d 1423, 1425–26 (9th Cir. 1984)). As the Ninth Circuit has noted, "[b]y including all legal interests without exception, Congress indicated its intention to include all legally recognizable interests although they may be contingent and not subject to possession until some future time." *Rau v. Ryerson (In re Ryerson)*, 739 F.2d at 1425 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S. Code Cong. & Ad. News 5963, 6136). It is debtor's burden to show that payments received resulting from postpetition services are not estate property. *In re Anderson*, 558 B.R. 369, 375 (Bankr. D. Idaho 2016).

  *Ryerson* provides an apt illustration of a situation where a portion of a debtor's prepetition contingent interest was includable in the bankruptcy estate, even where the interest vested postpetition, because the debtor's interest in the property was sufficiently rooted in the pre-bankruptcy past. In *Ryerson*, the debtor entered into an agreement with his employer that appointed him to the position of district manager. *Rau v. Ryerson (In re Ryerson)*, 739 F.2d at 1424. In the event of a cancellation or termination of the appointment, the employer, at its option, could elect to pay contract value to the debtor, based on an equation that included the service commission overwrite paid to the debtor during the six months immediately preceding termination times a factor determined by

MEMORANDUM OF DECISION − 6

the number of years of service as district manager. *Id*. To qualify for the cancellation or termination payment, the debtor must have served one full year as district manager and be in good standing with the employer. *Id*. At the time the debtor filed his petition, he had served four full years as district manager. *Id*. at 1425. The debtor filed his bankruptcy petition on February 10, 1981, and his appointment as district manager for his employer terminated on November 1, 1981. *Id*. at 1424. The Ninth Circuit concluded that debtor's interest in the contract value, although contingent at the time of filing and not payable until such time as his appointment was terminated or cancelled, was includable within the bankruptcy estate because the debtor, at the time of filing, "had accumulated value to which he was entitled upon termination or cancellation of his [a]ppointment [a]greement," and was, thus, sufficiently rooted in the prebankruptcy past as to be included within the bankruptcy estate. *Id*. at 1424–26. The panel determined that any portion of the contract value attributable to services performed after the petition date was expressly excluded from the estate. *Id*. at 1426.

The Ninth Circuit has prescribed the analysis to be applied in cases such as this. First, the Court must determine whether any postpetition services were necessary to obtaining the payments at issue. *Jess v Carey (In re Jess)*, 169 F.3d 1204, 1208 (9th Cir. 1999) (quoting *Towers v. Wu (In re Wu)*, 173 B.R. 411, 414–15 (9th Cir. BAP 1994)). If the answer to that question is "no," then the payments are entirely rooted in the pre-bankruptcy past and the payments will be included in the estate. *Id*. If some postpetition services were necessary, then the court moves on to the second part of the analysis. In

MEMORANDUM OF DECISION − 7

that situation, the court must determine the extent to which the payments are attributable to both pre- and postpetition services. *Id*. That portion of the payments allocable to the postpetition services will not be property of the estate, whereas that portion of the payments allocable to the prepetition services or property will be property of the estate. *Id*.

Set against the backdrop of *Ryerson*, and applying the analytical framework to the facts presented in this case, the Court finds that both pre- and postpetition services were necessary to receiving and retaining the relocation bonus. Debtor and BMH executed both the Agreement and the Amendment prepetition. Likewise, Debtor relocated prepetition pursuant to the relocation requirement. Additionally, the Amendment required that Debtor begin working full-time no later than six months after the employment start date. Debtor was not entitled to the relocation bonus until he began working full-time, however, which occurred postpetition. The Agreement also required that the Debtor work for a five-year period, which began running prepetition. BMH had no discretion to refuse to pay the relocation bonus if Debtor fulfilled the conditions in the Agreement and the Amendment. Once paid, however, the relocation bonus was subject to a repayment clause, where Debtor would be required to "pay back" a portion of the relocation bonus if the employment was terminated within the first two years of employment. The repayment clause made no distinction between part-time and full-time work performed by Debtor. Therefore, both pre- and postpetition services were required: the first two years of

MEMORANDUM OF DECISION − 8

employment had not lapsed prepetition, nor had it lapsed before Debtor received the relocation bonus.

While retention of the bonus was conditioned upon two full years of employment, that two-year period began prepetition but did not end until after the petition date. Debtor began working at BMH on July 31, 2019, and the two-year "repayment clause" period will end on July 30, 2021.[2] Debtor filed his bankruptcy petition on October 23, 2019 and thus 84 days passed between the start of the employment and the petition date. Overall, the two-year repayment period is 730 days.[3] As such, the Court concludes that 11.5% of the services required to retain the bonus occurred prepetition, whereas the remainder were performed postpetition. Therefore, Trustee is entitled to recover 11.5% of the relocation bonus.

Next, Debtor argues that if any of the relocation bonus must be turned over to the Trustee, then the Court should determine the apportionment based on the amount that Debtor actually received and had in his possession after deductions were withheld by BMH, as opposed to the full, pre-deduction $25,000 bonus amount sought by Trustee.

---

[2] Trustee argues that the estate entitled to 53% of the relocation bonus because that is the amount of part-time work attributable to prepetition services, whereas 47% of the part-time work is attributable to postpetition services. Of course, Debtor argues that the entire five-year period is relevant to determining how much work was attributable to prepetition services. Both arguments are unavailing. Because Debtor is subject to a two-year claw back period, and he would not be required to repay any portion of the relocation bonus after the two-year period ended, the Court believes that the two-year period is relevant in determining the portion of the bonus that is attributable to pre- and postpetition services.

[3] Although the calculation used by the parties to determine the repayment amount is in "full months worked," the Court, for the purposes of determining the turnover amount, measures the units in days.

MEMORANDUM OF DECISION - 9

Debtor received and had in his possession $15,392.72 of the $25,000 after deductions, which included $1,550.00 for Social Security, $362.50 for Medicare, $5,500.00 for federal income tax, $1,731.00 for state income tax, and $463.78 for child support. Trustee concedes that he is not seeking turnover of any of the funds that were withheld for Social Security or Medicare, which total $1,912.50. Accordingly, before it can calculate the amount which must be turned over, the Court must determine whether the income tax and child support withholdings are property of Debtor's bankruptcy estate and thus subject to § 542(a).[4]

Recall that § 542(a) requires that an entity or person in possession, custody, or control, during the case, of property that the trustee may use must deliver the property to the trustee, and account for such property or the value of such property. In *Nichols v. Birdsell*, 491 F.3d 987 (9th Cir. 2007), the debtors overpaid their federal and state tax returns and, as a result, were entitled to a refund. *Id*. at 988. Rather than cash out that refund, the debtors elected to leave those funds on deposit with the IRS to apply the overpayments to their future tax liability. *Id*. After the debtors applied their overpayment to their future tax liabilities, they filed for bankruptcy protection. The trustee argued that the debtor's interest in the tax overpayments were property of the estate under § 541, and

---

[4] It is well established that whatever interest a debtor holds in a tax refund becomes property of the estate upon the filing of a bankruptcy petition. *In re Cain*, No. 98-41095, 1999 WL 33486725, at *1 (Bankr. D. Idaho Aug. 4, 1999) (citing § 541(a); *Johnson v. Taxel (In re Johnson)*, 178 B.R. 216, 218 (9th Cir. BAP 1995) (citing *Segal v. Rochelle*, 382 U.S. 375, 380 (1966))). However, this case presents a slightly different issue of whether the amount withheld pursuant to federal and state income tax withholding requirements is subject to turnover pursuant to § 542(a).

MEMORANDUM OF DECISION − 10

sought turnover of the amount pursuant to § 542. *Id*. Debtors argued that the overpayment was not property of the estate because those funds became irrevocable when they elected to apply the overpayments to their future tax liabilities. *Id*. The Ninth Circuit found that the debtor's election resulted in a credit with the IRS that resulted in a dollar-for-dollar tax reduction the following year. *Id*. at 990. The panel reasoned that the definition of property is expansive under the Code and case law, and held that the credit toward future taxes constituted estate property at the time the Debtors filed for bankruptcy. *Id*.

Under federal law, the amount withheld for income tax purposes constitutes a credit for the recipient of the income against any federal income tax liability imposed. 26 U.S.C. § 31(a)(1). Idaho Code similarly describes any overpayment of taxes as a credit. *See* Idaho Code § 63-3041 ("If the taxpayer has paid more than the amount determined to be the correct amount of the tax, the excess shall be credited or refunded . . . ."). Accordingly, any amount deducted from Debtor's relocation bonus for federal or state income tax constitutes a credit towards Debtor's future tax liabilities. However, does the fact that deductions were taken out on a postpetition payment, even if rooted in the pre-bankruptcy past, compel a different result from the one reached by the Ninth Circuit in *Nichols*, where the debtors voluntarily applied the overpayment to future tax liability *prepetition*? This Court concludes that it does not.

Withholding federal and Idaho state taxes on income is not optional for the employer, it is required. 26 U.S.C. 3402(a)(1) ("[E]very employer making payment of wages shall deduct and withhold upon such wages a tax determined in accordance with

MEMORANDUM OF DECISION − 11

tables or computational procedures prescribed by the Secretary."); Idaho Code § 63-3035(a) ("Every employer who is required under the provisions of the Internal Revenue Code to withhold, collect and pay income tax on wages or salaries paid by such employer to any employee . . . shall, at the time of such payment of wages, salary, bonus or other emolument to such employee, deduct and retain therefrom an amount substantially equivalent to the tax reasonably calculated by the state tax commission to be due from the employee . . . .").

As stated above, the deducted amount is credited towards any federal or state income tax liability imposed on the employee. Any contingent interest of the debtor sufficiently rooted in the pre-bankruptcy past is estate property, even if the contingency is not satisfied until after the bankruptcy is filed. *Rau v. Ryerson (In re Ryerson)*, 739 F.2d at 1425–26. Therefore, because the Court has already determined that Debtor's contingent interest in the relocation bonus is sufficiently rooted in the pre-bankruptcy past so as to be property of the estate, so too is Debtor's interest in the tax credit for deductions withheld from the relocation bonus as a prepetition contingent interest that vested postpetition. Put another way, the relocation bonus was a prepetition contingent interest which vested postpetition. The employer is required to withhold federal and state taxes from that source of income. Whenever the relocation bonus was paid, the deductions were certain to occur. Those deductions are credits towards Debtor's future income tax liability. Although the facts of *Nichols* vary slightly from the facts presented here, the broader holding from that case, that credits towards future tax liability

MEMORANDUM OF DECISION − 12

constitutes property of the estate subject to turnover, is controlling here. Accordingly, the federal and state income tax withholdings will be included in the sum used by the Court to calculate the apportioned turnover amount.

Finally, the Court turns to whether the child support should be included in the sum used to determine the apportioned turnover amount. While Debtor argues that it should not be included and Trustee argues that it should, neither party offers any case law in support of their respective position. The Court can find no determinative case law on point. However, Idaho's child support statutes are informative.[5]

Child support withholdings are not necessarily akin to income tax withholdings. The intent of the Idaho legislature in drafting the child support statutes is to ensure that people who are owed child support are paid in accordance with the terms of their child support orders by requiring in them the authority necessary to permit wage withholding. Idaho Code § 32-1201. Idaho courts are required to order income withholding in all child support orders effective as of the date of the order. Idaho Code § 32-1204.

Typically, child support payments are made in monthly installments. *See e.g.*, Idaho Rules of Family Law Procedure 126. Upon receiving an income withholding order

---

[5] "While § 541 addresses what becomes property of the estate, the Court looks to state law to determine the nature and extent of the debtor's, and thus the estate's, interest in property as of the commencement of the case." *In re Ryerson*, 519 B.R. 275, 283 (Bankr. D. Idaho 2014) (citing *Butner v. United States*, 440 U.S. 48, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979); *McCarthy, Johnson & Miller v. N. Bay Plumbing, Inc. (In re Pettit)*, 217 F.3d 1072, 1078 (9th Cir. 2000) ("bankruptcy courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case")).

MEMORANDUM OF DECISION − 13

from the court or the Department of Health and Welfare, the employer must begin income withholding. Idaho Code § 32-1210(1). The income subject to the income withholding order must be withheld by the employer immediately upon receipt of the income withholding order and must be delivered to the Department of Health and Welfare within seven business days after the date the amount would have been paid to the employee. Idaho Code § 32-1210(2).[6] Moreover, unlike federal and state income taxes, the withholding of which is simply an estimation of tax liability that becomes a credit against the actual year-end tax liability, each child support installment stands on its own. There is no year end amount owed that is then reduced by the amount of child support that was withheld during the year. *See Stonecipher v. Stonecipher*, 131 Idaho 731, 736, 963 P.2d 1168, 1173 n. 3 (1998) ("Each child support installment is a mini-judgment for which the period of limitation begins to run on the date that the same becomes due."); *see also Dunn v. Dupre*, 91 Idaho 246, 420 P.2d 8 (1966); *Simonton v. Simonton*, 22 Idaho 255, 193 P. 386, 389 (1920). The child support is withheld by the employer before the employee receives the pay and the withheld amount is transferred from the employer to the Department of Health and Welfare, where it is then applied to the current support amount due and owing. In other words, once those payments are withheld, because the amount that is withheld is the amount currently due and owing, there are no credits

---

[6] Idaho Code § 32-1210(2) provides that "The withheld income shall be delivered to the department of health and welfare within seven (7) business days after the date the amount would have been paid *or credited* to the employee." The term credit here is not being used in the context of any amount being credited towards the employee's child support obligation.

MEMORANDUM OF DECISION – 14

waiting to be returned to the obligor as may be the case with federal and state income tax withholdings. Recall that, the Ninth Circuit, in *Nichols*, held that "[the] *credit toward future taxes* constituted estate property at the time the [d]ebtors filed for bankruptcy." *Nichols* 491 F.3d at 990 (emphasis added). When a debtor files a bankruptcy petition, the trustee acquires interests no greater than those held by the debtor. *In re Coupon Clearing Serv., Inc.*, 113 F.3d 1091, 1099 (9th Cir. 1997). Therefore, *Nichols* is inapplicable to child support withholdings and the funds withheld for child support in this case will not be included in the sum used by the Court to determine the apportioned turnover amount.

In sum, $22,623.72 is the starting point at which the Court will begin its calculations. This is the full amount of the relocation bonus excepting the amount that was withheld for Social Security, Medicare, and child support. Furthermore, 11.5% of the relocation bonus is attributable to prepetition services of Debtor. Therefore, Debtor will be required to turnover 11.5% of $22,623.72, totalling $2,601.73.

/

/

/

/

/

/

/

/

MEMORANDUM OF DECISION − 15

*Conclusion*

Trustee's Motion for Turnover will be granted in part and denied in part. The Motion for Turnover will be granted to the extent of the amount of the relocation bonus attributable to prepetition services. For the reasons set forth above, Debtor will be required to turnover $2,601.73. A separate order consistent with this decision will be entered.



DATED:  April 7, 2021

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE